**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL D'ALTILIO,** | : | **CIVIL ACTION NO. 1:06-CV-1931** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **DOVER TOWNSHIP,** | : | |
| **MADELYN SHERMEYER,** | : | |
| **DONALD L. BONSELL, and** | : | |
| **DUANE E. HULL,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the court is the motion (Doc. 48) of defendants Dover

Township and township supervisors Madelyn Shermeyer, Donald Bonsell, and

Duane Hull to dismiss the amended complaint (Doc. 46) of plaintiff Michael D'Altilio

("D'Altilio").  For the reasons that follow, the defendants' motion will be granted in

part and denied in part.

## I.   Factual Background[1]

Defendant Dover Township hired D'Altilio on December 29, 2003 to serve as

Director of the Department of Public Works.  (Doc. 46 ¶ 15.)  Township ordinances

required D'Altilio to undergo a six-month probationary period.  (Id. ¶ 19.)  Near the

end of this period, he requested a review from Township Manager Michael Morris

("Morris"), who commended D'Altilio's work.  (Id. ¶ 28.)  Despite this positive

---

[1]In accordance with the standard of review for a motion to dismiss, the court
will present the facts as alleged in the complaint. See infra Part II. The statements
contained herein reflect neither the findings of the trier of fact nor the opinion of
the court as to the reasonableness of the allegations.

review, defendant township supervisor Madelyn Shermeyer ("Shermeyer")

requested that Morris conduct an investigation into various unspecified deficiencies

in D'Altilio's performance.  (Id. ¶ 30.)  The five-member board of supervisors

extended D'Altilio's probationary period an additional sixty days over the objections

of Shermeyer and defendant supervisor Donald Bonsell ("Bonsell"), who both

desired to terminate plaintiff's employment.  (Id. ¶ 29.)  Morris conducted the

investigation requested by Shermeyer and presented a report to the board of

supervisors in June 2004 that reflected satisfactory job performance by D'Altilio.

(Id. ¶ 33.)  The board granted D'Altilio permanent employment status, with

Shermeyer and Bonsell dissenting (Id. ¶ 34-35.)

On several instances around this time, Shermeyer allegedly made derogatory

remarks about D'Altilio, referring to him as "Mafia Mike" because of his Italian

ethnicity and as "Humpty-Dumpty" because of his size and weight.  (Id. ¶ 38.)

Bonsell made offensive comments about D'Altilio's work attire, and both

supervisors commented to other township employees that D'Altilio "'[wasn't] one of

us'".  (Id. ¶¶ 40, 42.)  Shermeyer and Bonsell disapproved of his management of the

Department of Public Works and criticized his handling of various Township

projects.  (Id. 47.)  They also objected to D'Altilio's hiring of a particular job

applicant, who is not identified in the complaint, due to the applicant's gender and

size.  (Id. ¶ 45.)

At a board meeting held December 13, 2004, Shermeyer moved to discharge

D'Altilio.  (Id. ¶ 49.)  Supervisors Shane Patterson ("Patterson") and Michael

Husson ("Husson") expressed concern with Shermeyer's motion.   Husson observed that D'Altilio's personnel file contained no warnings or disciplinary history supporting discharge.  (Id. ¶¶ 50-51.)  Shermeyer retorted that such documentation would be available if the discharge decision were later challenged.  (Id. ¶ 52.) Patterson noted that the motion circumvented established township procedure for discharging employees, and he was unwilling to support it absent a thorough investigation into D'Altilio's conduct.  (Id. ¶¶ 54-55.)  Nevertheless, the motion passed with the support of Shermeyer, Bonsell, and defendant Supervisor Duane Hull ("Hull").  (Id. ¶ 56.)  Husson and Patterson dissented.  (Id. ¶¶ 43, 47, 49.)  After his dismissal, D'Altilio received a letter stating that the board had terminated his employment.  (Id. ¶ 59.)  The letter provided no reason for the discharge.  (Id. ¶ 60.) Shermeyer continued to refer to him as "Mafia Mike" after his dismissal.  (Id. ¶ 63.)

D'Altilio filed the present action on September 28, 2006.  He alleges violations of his equal protection rights under 42 U.S.C. § 1983.  He also advances claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-934; and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Stat. Ann. §§ 951–963. Defendants filed a motion to dismiss (Doc. 48) pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure.  The parties have fully briefed these issues, which are ripe for disposition.

II.   <u>**Standard of Review**</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." <u>Kanter v. Barella</u>, 489 F.3d 170, 177 (3d Cir. 2007) (quoting <u>Evancho v. Fisher</u>, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." <u>Oshiver v. Levin, Fishbein, Sedran & Berman</u>, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); <u>see also</u> <u>In re Burlington Coat Factory Sec. Litig.</u>, 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice pleading rules require the complaint to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." <u>Sershen v. Cholish</u>, No. 3:07-CV-1011, 2007 WL 3146357, at *4 (M.D. Pa. Oct. 26, 2007) (quoting <u>Erickson v. Pardus</u>, --- U.S. ---, 127 S. Ct. 2197, 2200 (2007)).  The plaintiff must present facts that, if true, demonstrate a plausible right to relief. <u>See</u> FED. R. CIV. P. 8(a) (stating that the complaint should include "a short and plain statement of the claim showing that the pleader is entitled to relief"); <u>Bell Atl. Corp. v. Twombly</u>, --- U.S. ---, 127 S. Ct. 1955, 1965 (2007) (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"); <u>Victaulic Co. v. Tieman</u>, 499

4

F.3d 227, 234 (3d Cir. 2007).  Thus, courts should not dismiss a complaint for failure to state a claim if it "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory."  <u>Montville Twp. v. Woodmont Builders LLC</u>, No. 05-4888, 2007 WL 2261567, at *2 (3d Cir. 2007) (quoting <u>Twombly</u>, --- U.S. at ---, 127 S. Ct. at 1969).  Under this liberal pleading standard, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient.  <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002); <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000).

## III.  Discussion

D'Altilio alleges violations of his equal protection rights by all defendants under 42 U.S.C. § 1983.  He asserts Title VII and PHRA claims for retaliation and disparate treatment against Dover Township, to which he appends a PHRA claim for individual liability against Shermeyer, Bonsell, and Hull (hereinafter collectively "the individual defendants").  Finally, he advances a claim against Dover Township for age discrimination under the ADEA.  The court will address these issues *seriatim*.

_____ A.   **Equal Protection Pursuant to 42 U.S.C. § 1983**

D'Altilio advances a claim pursuant to 42 U.S.C. § 1983[2] alleging that

defendants deprived him of his right to equal protection guaranteed by the

Fourteenth Amendment.  Section 1983 provides protection when official action

causes a "deprivation of rights protected by the Constitution."  Monell v. Dep't of

Soc. Svcs., 436 U.S. 658, 690 (1978).  However, § 1983 is not an independent source

of substantive rights. Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979); Kneipp v.

Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  Rather, "it provides only remedies for

deprivations of rights established elsewhere in the Constitution or federal laws."

Kneipp, 95 F.3d at 1204; see also Collins v. City of Harker Heights, 503 U.S. 115, 119

(1992) (Section 1983 "does not provide a remedy for abuses that do not violate

federal law.").  In order to establish a § 1983 claim, a plaintiff must demonstrate,

first, the deprivation of a constitutional right, and, second, that a "person acting

under the color of state law" is responsible for the alleged deprivation.  Kneipp, 95

F.3d at 1204 (internal citations omitted); Collins, 503 U.S. at 120.

_____

[2]Section 1983 states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress. . . .

42 U.S.C. § 1983.

### 1.   **Individual Defendants**

The Equal Protection Clause of the Fourteenth Amendment directs that all similarly situated individuals be treated alike.  <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985).  Two theories exist upon which a plaintiff may predicate an equal protection claim.  The traditional theory protects a plaintiff from discriminatory treatment based on membership in a protected class such as race or gender.  <u>See, e.g.</u>, <u>id.</u>; <u>McLaughlin v. Florida</u>, 379 U.S. 184, 192 (1964).  To assert a protected class claim, the plaintiff must demonstrate that (1) he or she is a member of a protected class and (2) the government treated similarly situated individuals outside of the protected class differently.  <u>See</u> <u>Oliveira v. Twp. of Irvington</u>, 41 F. App'x 555, 559 (3d Cir. 2005) (observing that a *prima facie* case under the Equal Protection Clause requires plaintiffs to prove membership in "a protected class and that they received different treatment than that received by other similarly-situated individuals"); <u>Keenan v. City of Phila.</u>, 983 F.2d 459, 465 (1992).  Under this theory "a plaintiff . . . prove the existence of purposeful discrimination" by defendants. <u>Bierley v. Grolumond</u>, 174 F. App'x 673, 676 (3d Cir. 2006); <u>see also</u> <u>Oliveira</u>, 41 F. App'x at 559; <u>Keenan</u>, 983 F.2d at 465.

In contrast, under the class-of-one theory, a plaintiff may advance an equal protection claim absent membership in a protected class if the plaintiff alleges irrational and intentional differential treatment when compared with similarly situated individuals.  <u>See</u> <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000). This theory allows a plaintiff to assert an equal protection claim regardless of

protected class when the government irrationally treats the plaintiff differently than similarly situated individuals.  Id. at 564; Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).  To assert a class-of-one claim, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."  Hill, 455 F.3d at 239.

In the case *sub judice*, D'Altilio advances claims under both theories against Shermeyer, Bonsell, and Hull.  (See Doc. 46 ¶¶ 23, 25, 76).  D'Altilio has clearly alleged that the individual defendants acted under color of state law by discharging him through a formal resolution of the board of supervisors.  See Russoli v. Salisbury Twp., 126 F. Supp. 2d 821, 839 (E.D. Pa. 2000) ("Actions by an officer in his official capacity are under color of law even if they are not in furtherance of state policy and even if they violate state law.").  He has also alleged that he qualifies as a member of a protected class based upon his Italian ethnicity.  Dennis v. City of Easton, No. 94-CV-5073, 1996 WL 32898, at *10 (E.D. Pa. Jan 23, 1996) (listing national origin as protected class).  The court therefore turns to the alleged deprivation of his equal protection rights.

D'Altilio alleges that Shermeyer attempted to prevent the township from hiring him, and she sought to discharge him following his appointment.  She commonly referred to him as "Mafia Mike," and she informed other employees that he "[was]n't one of us."  (Doc. 46 ¶ 42.)  Despite positive performance reviews and a lack of disciplinary infractions, Shermeyer allegedly spearheaded the effort to

8

terminate D'Altilio's employment.  She continued to refer to him in an ethnically

disparaging manner after his employment ended.  Shermeyer did not treat other

township employees in a similar manner.  These allegations raise a plausible

inference that Shermeyer sought to discharge D'Altilio due to ethnic animus or for

irrational reasons.  Accordingly, the motion to dismiss the protected-class and class-

of-one equal protection claim against Shermeyer will be denied.

D'Altilio alleges that Bonsell behaved in a similar manner.  Bonsell allegedly

informed township employees that D'Altilio "[was]n't one of us," and he joined

Shermeyer in seeking to terminate D'Altilio's employment.  (Id. ¶ 42.)  Bonsell

repeatedly questioned D'Altilio's supervisory decisions and supported his discharge

notwithstanding adequate job performance.  Bonsell joined Shermeyer in voting to

end D'Altilio's employment in a manner not authorized by township ordinances.

Bonsell did not confer such treatment on other township supervisors or employees.

These allegations support a plausible inference that Bonsell acted irrationally based

on ethnic animus against D'Altilio, and the motion to dismiss the equal protection

claim against him will be denied.

Finally, D'Altilio alleges that Hull discriminatorily voted to discharge him.  At

the time of dismissal, D'Altilio had incurred no disciplinary infractions.

Nevertheless, Hull acted alongside Shermeyer and Bonsell, against whom D'Altilio

has raised an inference of discrimination.  The alleged discriminatory motives of

Shermeyer and Bonsell color Hull's vote, and his motives becomes increasingly

suspect in light of Husson and Patterson's concern that no legitimate foundation

existed to support D'Altilio's discharge.  Accordingly, D'Altilio's complaint

successfully asserts an equal protection claim against Hull, and the motion to

dismiss will be denied.

### 2.  **Municipal Liability**

D'Altilio also advances an equal protection claim against Dover Township.

Municipalities and other local government entities may not be held liable under

§ 1983 for the acts of their employees under a theory of *respondeat superior* or

vicarious liability.  Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997).

However, a municipality may be held liable if the plaintiff can "identify a municipal

'policy' or 'custom' that caused the plaintiff's injury."  Id. (citing Monell, 436 U.S. at

694).

A policy is an official proclamation or edict of a municipality, while a custom

is a practice that is "so permanent and well settled as to virtually constitute law."

Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (quoting Andrews v. City

of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted); see also Watson v.

Abington Twp., 478 F.3d 144, 155 (3d Cir. 2007) (reiterating the municipal policy

exists when an individual with final decision-making authority "issues an official

proclamation, policy, or edict").  "A custom is an act 'that has not been formally

approved by an appropriate decisionmaker,' but that is 'so widespread as to have

the force of law."  Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir.

2003) (quoting Brown, 520 U.S. at 404).  The policy or custom upon which the

plaintiff bases a claim must emanate from individuals with the authority to

promulgate municipal standards in the relevant area.  See LaVerdure v. County of Montgomery, 324 F.3d 123, 126 (3d Cir 2003) ("To be a policymaker for § 1983 purposes, an official must have *final* policymaking authority.").  A plaintiff must demonstrate either that the policymaker's action violated the plaintiff's rights or that the policymaker failed to act when presented with an obvious need for action, rendering the municipality "deliberately indifferent" to the situation.  Natale, 318 F.3d 575 at 584 (quoting Brown, 520 U.S. at 471-18).

In the instant matter, D'Altilio alleges that Dover Township discharged him by passing a formal resolution, terminating him after a history of discriminatory remarks by Shermeyer and Bonsell.  Other township managers and previous directors of public works received no similar treatment.  The comments of Shermeyer and Bonsell raise a plausible inference that ethnic disdain motivated Dover Township's formal edict terminating D'Altilio.  See Rojas v. City of New Brunswick, No. Civ. A. 04-3195, 2008 WL 2355535, at *20 (D.N.J. June 4, 2008) (stating that "a resolution passed by a city council . . . satisf[ies] the requirement that a policy, practice, or custom existed"); Alba v. Hous. Auth. of Pittston, 400 F. Supp. 2d 685, 702 (M.D. Pa. 2005) (observing that a plaintiff must establish

discriminatory intent to successfully advance an equal protection claim).

Accordingly, the motion to dismiss the municipal liability claim will be denied.[3]

**B.**     **Title VII and PHRA Claims**

D'Altilio advances disparate treatment and retaliation claims against Dover

Township under Title VII and the PHRA.  He also asserts PHRA claims for

individual liability against Shermeyer, Bonsell, and Hull.  Defendants move to

dismiss both claims on the grounds that the complaint contains insufficient facts to

support them and that D'Altilio has failed to exhaust administrative remedies

applicable to the retaliation claim.

**1.**     **Disparate Treatment**

A prima facie case of Title VII discrimination requires the plaintiff to satisfy

the following elements:  (1) the plaintiff is a member of a protected class, (2) the

plaintiff was qualified for the position the plaintiff held or sought, (3) the plaintiff

suffered an adverse employment action, and (4) the circumstances of the adverse

employment action give rise to an inference of discrimination.  Johnson v. Keebler-

Sunshine Biscuits, Inc., 214 F. App'x 239, 241 (3d Cir. 2007); Connors v. Chrysler

Fin. Corp., 160 F.3d 971, 974 (3d Cir. 1998).  However, to plead a claim for disparate

---

[3]Dover Township seeks dismissal of D'Altilio's demand for punitive damages because such damages cannot be recovered from municipal entities under § 1983. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 267-68 (1981); 42 PA. CONS. STAT. § 8553(c); Marko by Marko v. City of Phila., 576 A.2d 1193, 1194 (Pa. Commw. Ct. 1990).  The motion will be granted insofar as D'Altilio seeks such damages. Leave to amend will be denied as futile.  Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

treatment under Title VII, the complaint need not allege each element of a prima

facie case.  See FED. R. CIV. P. 8(a)(2) (requiring that complaints merely contain a

"short and plain statement showing that the pleader is entitled to relief");

Swierkiewicz v. Sorema N.A., 534 U.S. 506, 515 (2002) ("[A]n employment

discrimination plaintiff need not plead a prima facie case of discrimination.");

Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 764 (3d Cir. 2004).  A complaint must

simply allege facts that "provide fair notice of a plaintiff's claim[]" and demonstrate

a plausible right to relief.  See Bell Atl. Corp. v. Twombly, --- U.S. ---, 127 S. Ct. 1955,

1965 (2007) (requiring plaintiffs to allege facts sufficient to "raise a right to relief

above the speculative level"); Grigsby v. Pratt & Whitney Amercon, Inc., No. 1:CV-

07-0785, 2008 WL 471549, at *7 (M.D. Pa. Feb. 19, 2008.); see also Storey, 390 F.3d at

764.  Thus, to survive a motion to dismiss, a Title VII plaintiff must allege that, as a

result of the plaintiff's protected status, he or she suffered an adverse employment

action "serious and tangible enough to alter [the plaintiff's] compensation, terms,

conditions, or privileges of employment."  Storey, 390 F.3d at 764 (quoting Cardenas

v. Massey, 269 F.3d 251, 263 (3d Cir. 2001); see also Swierkiewicz, 534 U.S. at 514

(holding that a plaintiff had asserted a cognizable Title VII claim after plaintiff

alleged "detailed the events leading to his termination, provided relevant dates, and

included the . . . nationalities of at least some of the relevant persons involved").

 In the instant matter, D'Altilio's alleges that Shermeyer disparaged his

Italian ethnicity and that she and Bonsell stated that he "[was]n't one of us."  (Doc.

46 ¶ 38, 42.)  These comments indicate that D'Altilio was unwelcome as a staff

member of Dover Township.  The board of supervisors imposed a lengthened

probationary status on him and eventually discharged him despite satisfactory

performance reviews.  Neither D'Altilio's non-Italian predecessors nor the

township's other non-Italian supervisory employees received similar treatment.

These allegations place defendants on notice of a disparate treatment claim against

them and demonstrate a plausible right to relief under Title VII.  See Swierkiewicz,

534 U.S. at 508-09 (concluding that plaintiff's complaint—which alleged that he was

demoted, excluded from corporate decision-making, and eventually forced to

resign—sufficiently pled a disparate treatment claim).[4]  The motion to dismiss the

disparate treatment claim will therefore be denied.

### 2.   **Retaliation**

Defendants next argue that D'Altilio's complaint fails to allege a retaliation

claim and that any retaliation claim is barred by his failure to exhaust

administrative remedies.  Title VII proscribes retaliation by an employer against

---

[4]Many courts have recognized that the standard of review applied in
Swierkiewicz no longer governs motions to dismiss following Bell Atlantic v.
Twombly, --- U.S. ----, 127 S. Ct. 1955 (2007).  See, e.g., Premier Pork LLC v. Westin,
Inc., No. Civ. A. 07-1661, 2008 WL 724352, at *3 (D.N.J. Mar. 17, 2008); Azteck
Energy Partners v. Sensor Switch, Inc., 531 F. Supp. 2d 226, 228 (D. Conn. 2007).
Nevertheless, Swierkiewicz continues to illustrate the type of factual allegations
necessary to substantiate a disparate treatment claim.  See, e.g., Grigsby, 2008 WL
471549, at *7; (relying on Swierkiewicz for proposition that no heightened pleading
standard applies to civil rights actions); see also Sung Tran v. Delavau, LLC, No.
Civ. A. 07-3550, 2008 WL 2051992, at *13 (E.D. Pa. May 13, 2008) (same).  Here,
D'Altilio experienced disparaging comments by Shermeyer and Bonsell.  These
comments, when coupled with his extended probationary period and eventual
termination, adequately plead a disparate treatment claim under the Twombly
standard of review.

"employees or applicants for employment . . . because [they] ha[ve] opposed any practice made an unlawful employment practice by this subchapter, or because [they] ha[ve] made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). A plaintiff who suffers an adverse employment action as a result of the plaintiff's opposition to an employer's discriminatory practices may bring a retaliation claim. See, e.g., Bielek v. Allegheny Ludlum Corp., No. 2:04-CV-1910, 2006 WL 2773487, at *17 (W.D. Pa. Sept. 22, 2006) (stating that a retaliation claim may be predicted on activity that "express[es], either explicitly or implicitly, opposition to discrimination on the basis of some protected characteristic, such as race, gender, age, or disability).

### a.   Sufficiency of D'Altilio's Allegations of Retaliation

A prima facie case of unlawful retaliation requires the plaintiff to demonstrate that: "(1) he or she engaged in a protected employee activity; (2) the employer took an adverse employment action after or contemporaneous with the protected activity; and (3) a causal link exists between the protected activity and the adverse action." Weston v. Pennsylvania, 251 F.3d 420, 430 (3d Cir. 2001); see also Aguiar v. Morgan Corp., 27 F. App'x 110, 112 (3d Cir. 2002). The same liberal pleading standard applicable to disparate treatment claims applies to those for retaliation. See supra Part III.B.1; Connolly v. Mitsui O.S.K. Lines (Am.), Inc., No. Civ. A. No. 04-5127, 2007 WL 4207836, at *5 (D.N.J. 2007).

15

In the case *sub judice*, D'Altilio alleges that Dover Township discharged him because he refused to entertain Shermeyer and Bonsell's suggestion that he decline to hire a particular applicant based on the applicant's gender.[5]  (Doc. 46 ¶ 45.) Shermeyer and Bonsell openly disapproved of his hiring decision and later succeeded in discharging him with assistance from Hull.  These allegations are sufficient to allege a Title VII retaliation claim arising from D'Altilio's opposition to Shermeyer and Bonsell's suggested discriminatory hiring practice.  See, e.g., Barber v. CSX Distrib. Servs., 68 F.3d 694, (3d Cir. 1995) (holding that an individual "engage[s] in 'protected conduct' [under ADEA retaliation provisions analogous to those of Title VII] when s/he opposes discrimination on the basis of [a protected characteristic]").

### b.    Exhaustion of Administrative Remedies

Before pursuing a Title VII claim in federal court, however, claimants alleging a Title VII violation by a political subdivision must present their claim to a state administrative agency.  See 42 U.S.C. § 2000e-5(c).  In Pennsylvania this agency is the Pennsylvania Human Relations Commission ("PHRC").  Sixty days after filing with the state agency, the claimant may file a charge with the EEOC. See id.  If the EEOC elects not to pursue the claimant's allegations, it will issue the claimant a right-to sue-letter.  See id. § 2000e-5(f)(1).  The claimant may file an

---

[5]Dover Township ordinances, like Title VII, prohibit reliance on gender or membership in other protected classes when making hiring decisions.  See Dover Township, Pa., Resolution 2002-01, at 2 (Jan. 7, 2002).

action in federal court after receiving this letter.  See id.; see also id. § 2000e-16;

Waiters v. Parsons, 729 F.2d 233, 237 (3d Cir. 1984) (per curiam).

Compliance with this administrative framework is mandatory.  See Burgh v.

Borough Council, 251 F.3d 465, 471 (3d Cir. 2001).  However, "a district court may

assume jurisdiction over additional charges [beyond those raised in an

administrative pleading] if they are reasonably within the scope of the

complainant's original charges and if a reasonable investigation by the EEOC

would have encompassed the new claims."  Howze v. Jones & Laughlin Steel Corp.,

750 F.2d 1208, 1212 (3d Cir. 1984); see also Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir.

1996) (quoting Waiters, 729 F.2d at 237) ("The relevant test . . . is whether the acts

alleged in the subsequent Title VII suit are fairly within the scope of the prior

EEOC complaint, or the investigation arising therefrom.").

In the pending matter, D'Altilio's administrative charge, filed with the PHRC

on January 31, 2005, contains claims for ethnicity and age discrimination but not for

retaliation.[6]  (See Doc. 18, Ex. A ¶¶ 5-22.)  Nevertheless, it unambiguously identifies

Shermeyer as the moving impetus behind his termination.  It asserts that she made

disparaging comments about his ethnicity, (id. ¶ 14), opposed his appointment to a

position with the township, (id. ¶ 13), and preferred to hire a younger person for his

position, (id. ¶ 21).  Due to Shermeyer's persistent opposition to D'Altilio's

---

[6]Defendants attached D'Altilio's PHRC complaint to their brief in support
(Doc. 18) of the motion to dismiss his original complaint, and they have
incorporated it by reference in their pending motion papers.  D'Altilio does not
contest the accuracy of the PHRC complaint.

employment, it appears likely that an administrative investigation of reasonable scope would have included an examination of possible interference in hiring decisions.  However, neither party has provided evidence regarding the precise breadth of the administrative investigation, and the court is ill-equipped to adjudicate the propriety of D'Altilio's retaliation claim without such information. Final resolution on the exhaustion issue is appropriately reserved for summary judgment, after the parties have apprised the court of the breadth of the PHRC and EEOC's conciliation efforts.[7]  See Anjelino v. N.Y. Times Co., 200 F.3d 73, 94 (3d Cir. 1999) (quoting Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976)) (stating that the "parameters of a civil action in the District Court are defined by the scope of the [administrative] investigation which can reasonably be expected to grow out of the charge of discrimination").  Accordingly, the motion to dismiss

---

[7]Courts are often reluctant to allow a plaintiff to join additional retaliation claims with those asserted in an administrative charge if "the alleged retaliation occurred prior to the EEOC charge," such that the plaintiff could have included it in the charge.  See Simmerman v. Hardee's Food Sys., No. Civ. A. 94-6906, 1995 WL 628140, at *2 (E.D. Pa. Oct. 24, 1995) (quoting Farber v. Gen. Elec. Co., No. Civ. A. 93-2349, 1994 WL 46519, at *2 (E.D. Pa. Feb. 16, 1994); see also Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 413 n.18 (E.D. Pa. 2000).  Nevertheless, the lack of record evidence regarding the administrative process renders dismissal for failure to exhaust administrative remedies premature at this point.

will be denied without prejudice to defendants' right to raise exhaustion at summary judgment.[8]

### 3.   Individual Liability under the PHRA

D'Altilio also asserts PHRA claims for individual liability against Shermeyer, Bonsell, and Hull.  The PHRA imposes liability upon any individual who "attempt[s], directly or indirectly, to commit any act declared . . . an unlawful discriminatory practice." 43 PA. STAT. ANN. § 955(e).  Unlawful discriminatory practices include, *inter alia*, ethnicity-based employment termination.  Id. § 955(a).  A PHRA plaintiff may advance individual liability claims against supervisory employees who bear responsibility for implementing an allegedly unlawful discriminatory practice.  See  Carlton v. City of Phila., No. Civ. A. 03-1620, 2004 WL 633279, at *8 (E.D. Pa. Mar. 30, 2004) (stating that supervisory employees can be held liable based upon "the theory that . . . [they] share the discriminatory purpose and intent of the employer.").

In the instant matter, the alleged disparate treatment and retaliation occurred as a direct result of management decisions made by Shermeyer, Bonsell, and Hull.  Hence, D'Altilio has plausibly averred that these defendants acted with discriminatory animus toward his ethnicity.  See supra Part III.A.1.  D'Altilio has

---

[8]D'Altilio brings disparate treatment and retaliation claims under the PHRA as well as under Title VII.  Analysis of these claims is equivalent to that under Title VII.  See Jones v. Sch. Dist. of Phila. 198 F.3d 403, 410 (3d Cir. 1999); Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997).  Accordingly, the motion to dismiss the PHRA claims against Dover Township will be denied for reasons identical to those discussed above.

successfully alleged that the individual defendants facilitated Dover Township's

unlawful employment practices, and the motion to dismiss the individual liability

claims will be denied.

### C.   <u>Age Discrimination</u>

A prima facie case of age discrimination requires the plaintiff to demonstrate

that (1) the plaintiff is over forty years of age, (2) was qualified for the position at

issue, (3) was denied employment or discharged despite the plaintiff's

qualifications, and that (4) the employer later "filled the position with someone

sufficiently younger to permit an inference of age discrimination."  <u>Narin v. Lower

Merion Sch. Dist.</u>, 206 F.3d 323, 331 (3d Cir. 2000); <u>see also</u> <u>Acevedo v. Monsignor

Donovan High Sch.</u>, 420 F. Supp. 2d 337, 341 (D.N.J. 2006).  Like other civil rights

claims, however, the plaintiff need not allege all elements of a prima facie case at

the pleading stage.  <u>See</u> <u>Twombly</u>, --- U.S. ---, 127 S. Ct. at 1965; <u>Satterfield v. Consol

Pa. Coal Co.</u>, No. 06-1262, 2007 WL 2728541, at *4 (W.D. Pa. Sept. 17, 2007)

(observing that "the court's inquiry [when reviewing a motion to dismiss] is limited

to the question whether plaintiff's allegations relating to an alleged violation of the

ADEA set forth a claim upon which relief may be granted"); <u>Jaworski v. N.J. Tpk.

Auth.</u>, No. Civ. A. 05-4485, 2007 WL 773757, at *2 (D.N.J. Mar. 9, 2007) (citing <u>Pryor

v. Nat'l Collegiate Athletic Ass'n</u>, 288 F.3d 548, 564 (3d Cir. 2002) ("[A] complaint

need . . . "not [provide] a detailed recitation of the proof that will in the end

establish such a right.").

In the instant matter, D'Altilio alleges that he was terminated at the age of sixty-four. (Doc. 46 ¶ 92.) Shermeryer opposed his appointment because she preferred to offer the position to a candidate "much younger" than D'Altilio. (Id. ¶ 36.) Shermeyer and Bonsell interfered with his management of the Department of Public Works throughout his tenure. Shermeyer, Bonsell, and Hull eventually discharged him, and the township hired a "significantly younger" individual for his position. (Id. ¶ 69.) These averments raise a plausible right to relief under the ADEA. Accordingly, the motion to dismiss the ADEA claim will be denied.

## IV.   <u>Conclusion</u>

For the reasons stated above, defendant's motion (Doc. 48) will be granted with respect to D'Altilio's demand for punitive damages under § 1983. <u>See</u> <u>supra</u> note 3. The motion will otherwise be denied.

An appropriate order follows.

<u>  S/ Christopher C. Conner  </u>
CHRISTOPHER C. CONNER
United States District Judge

Dated:      August 21, 2008

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL D'ALTILIO,** | : | **CIVIL ACTION NO. 1:06-CV-1931** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **DOVER TOWNSHIP,** | : | |
| **MADELYN SHERMEYER,** | : | |
| **DONALD L. BONSELL, and** | : | |
| **DUANE E. HULL,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 21st day of August, 2008, upon consideration of the

defendants' motion to dismiss (Doc. 48) the amended complaint, and for the reasons

set forth in the accompanying memorandum, it is hereby ORDERED that:

1. The motion to dismiss (Doc. 48) is GRANTED in part and DENIED in part as follows:

   a. The motion is GRANTED insofar as it seeks dismissal of plaintiff's demand for punitive damages against defendant Dover Township under 42 U.S.C. § 1983. Leave to amend is denied as futile. See Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002).

   b. The motion is DENIED in all other respects.

2. A revised pretrial and trial schedule shall issue by future order of court.

 S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge