**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MICHAEL D'ALTILIO, | : | CIVIL ACTION NO. 1:06-CV-1931 |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| DOVER TOWNSHIP, | : | |
| MADELYN SHERMEYER, | : | |
| DONALD L. BONSELL, and | : | |
| DUANE E. HULL, | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Michael D'Altilio brings this action alleging that defendants violated his right to equal protection and discriminated against him on the basis of national origin and age while he served as director of the Department of Public Works for Dover Township. Presently before the court is the motion (Doc. 68) for summary judgment filed by defendants Dover Township and township supervisors Madelyn Shermeyer, Donald Bonsell, and Duane Hull. For the reasons that follow, the defendants' motion will be granted in part and denied in part.

## I.    Factual Background[1]

In late 2003, Michael D'Altilio applied for a job as director of the Department of Public Works with defendant Dover Township. (Doc. 75, Ex. A at 23-24.) Township policy vests hiring decisions with township manager Michael Morris

---

[1]In accordance with the standard of review for a motion for summary judgment, the court will present the facts in the light most favorable to the plaintiff, who is the nonmoving party. See infra Part II.

("Morris").  (Doc. 75, Ex. P ¶ 2.26.)  Because this was a key position, however, Morris arranged for three candidates, including D'Altilio, to interview with the township's board of supervisors.  (Doc. 70 ¶¶ 14-15; Doc. 75 ¶¶ 14-15.)  Morris was in favor of hiring D'Altilio.  (Doc. 70 ¶ 17; Doc. 75 ¶ 17.)  After the board concluded its interviews, defendant township supervisor Madelyn Shermeyer ("Shermeyer") favored hiring a younger candidate instead of D'Altilio, (Doc. 75, Ex. C at 15), but a majority of the supervisors agreed to hire D'Altilio, (Doc. 70 ¶ 30; Doc. 75 ¶ 30).  Accordingly, Dover Township hired him on December 29, 2003.  (Doc. 70 ¶ 40; Doc. 75 ¶ 40.)  D'Altilio was sixty-four years old on his date of hire.  (Doc. 70 ¶ 41; Doc. 75 ¶ 41.)

Pursuant to Dover Township policy, D'Altilio underwent a six-month probationary period.  (Doc. 70 ¶ 43; Doc. 75 ¶ 43.)  During this period defendant township supervisor Donald Bonsell ("Bonsell") and supervisor Shermeyer received a number of complaints about D'Altilio's performance.  (Doc. 70 ¶¶ 45, 113, 156; Doc. 75 ¶ 156; Doc. 75, Ex. C at 63:8-9, 72-73, 75, 78, 85-87).  As a result, Morris commenced an investigation into eight issues, (Doc. 70 ¶ 154; Doc. 75 ¶ 154; Doc. 75, Ex. C at 64:2-3, 72:17-18, 75:7-15), including more than one instance in which

D'Altilio's abruptness demonstrated a poor attitude.[2]

Both Shermeyer and Bonsell expressed a desire to terminate D'Altilio's employment at the end of his probationary period. (Doc. 70 ¶ 109; Doc. 75 ¶¶ 109; Doc. 71, Ex. E at 201-03.) Nevertheless, by majority vote, the five-member board of supervisors extended D'Altilio's probationary period an additional sixty days in order for Morris investigate and resolve the outstanding issues concerning D'Altilio's performance. (Doc. 70 ¶¶ 148, 152; Doc. 75 ¶¶ 148, 152.) At the conclusion of his investigation, Morris presented a report, dated June 28, 2004, to the board of supervisors. (Doc. 70 ¶ 154; Doc. 75 ¶ 154; Doc. 75, Ex. C at 72.) Morris recommended that the board grant D'Altilio permanent employment status. (Doc. 70 ¶ 161; Doc. 75 ¶ 161.) A majority of the board did so, with Shermeyer and Bonsell dissenting. (Doc. 70 ¶ 161; Doc. 75 ¶ 161; Doc. 71, Ex. E at 201.)

---

[2] For instance, on one occasion, D'Altilio abruptly cut off a telephone call with an assistant manager of a local supermarket by hanging up on him. (Doc. 75, Ex. A at 74-75). Supervisor Shermeyer also complained that D'Altilio turned his back on her and walked away from her before she felt their conversation was over. (Doc. 71, Ex. E at 140; Doc. 75, Ex. A at 78-80.) Morris testified that, after his investigation, he found that "these two incidents of inappropriate behavior call[ed] for a reprimand that this behavior not be repeated." (Doc. 75, Ex. C at 86:1-3.)

Morris investigated a variety of other issues as well. His report addressed complaints alleging that D'Altilio changed the snow removal policy with a result of "increased overtime and inefficiency," handled complaints inefficiently, violated bid procedures, improperly waived the bond requirement for a bidding proposal, failed to follow lobby renovation plans, delegated too many of his responsibilities, and continued to work on a garage expansion project "despite the Board's wishes not to continue with the project." (Doc. 71, Ex. H.) Morris testified, however, that he did not make "positive findings" as to the other issues he investigated, (Doc. 75, Ex. C at 85:20), and that he felt that he was "chasing ghosts," (id. at 78:20), because he received vague information, lacking particulars.

Various employees of Dover Township—including Dennis Jadro, Stephanie Barnes, and Laurie Rummel—allege that Shermeyer made derogatory remarks about D'Altilio on several instances around this time, referring to him as "Mafia Mike" because of his Italian descent and as "Humpty-Dumpty" because of his size and weight (Doc. 75 ¶ 243; Doc. 75, Ex. H at 42; Doc. 75, Ex. I at 10; Doc. 75, Ex. J at 15). In addition, Bonsell made allegedly derogatory comments about D'Altilio's work attire and commented to other township employees that D'Altilio "'[wasn't] one of us.'" (Doc. 71, Ex. C at 101; Doc. 75, Ex. Q ¶ 17.) Shermeyer and Bonsell remained unsatisfied with D'Altilio's job performance. (Doc. 71, Ex. E at 90:10-13; Doc. 71, Ex. E at Depo. Ex. 4; Doc. 71, Ex. C at 53:11-12.) They also objected to D'Altilio's hiring of a particular job applicant, in September 2004, due to the applicant's gender and size. (Doc. 84, Ex. A at 167-77; Doc. 84, Ex. B at 109-11.)[3]

At a board meeting held December 13, 2004, Shermeyer asked for a motion to discharge D'Altilio, Bonsell made the motion, and defendant supervisor Duane Hull ("Hull") seconded it. (Doc. 75, Ex. L at 4.). In the ensuing discussion, supervisor Michael Husson ("Husson") took issue with the fact that D'Altilio's personnel file contained no documentation that would support discharge, such as complaints or

---

[3] No letters or numbers are assigned to the exhibits contained in Docket No. 84. For ease of reference, the court will identify the exhibits as follows: Exhibit A shall refer to the excerpt from the deposition transcript of Michael D'Altilio, Exhibit B shall refer to the excerpt from the deposition transcript of Michael Morris, and Exhibit C shall refer to the excerpt from the deposition transcript of Madelyn Shermeyer. The court will cite portions of these exhibits using the pages numbers that appear on the deposition transcripts.

formal reprimands.[4]  (Doc. 70 ¶¶ 53, 160, 204; Doc. 75 ¶¶ 53, 160, 204.)  Supervisor Shane Patterson ("Patterson") expressed concern that the motion circumvented the township manager's ordinance for discharging employees.  (Doc. 75 ¶ 228.) Over the dissent of Patterson and Husson, however, a majority of the board approved the motion to discharge D'Altilio.  (Doc. 70 ¶ 219; Doc. 75 ¶ 219; Doc. 75, Ex. L at 4.)

The board's resolution to dismiss D'Altilio departed from some of Dover Township's policies and customs.  Township policy provides that "[a]ll dismissals shall be made by the Manager."  (Doc. 75, Ex. K at 19.)  Although Morris carried out D'Altilio's dismissal, Morris's testimony indicates that he was acting pursuant to the board's directive, not his own volition.  (Doc. 75, Ex. C at 35-36, 42-43.)  On no other occasions did the board direct Morris to dismiss an employee, except when it was voting to eliminate a position from the township budget.  (Doc. 75, Ex. C at 39.) Township policy also provides that "[n]o dismissal shall occur until a written statement containing the charges is presented to the employee by the Manager and a hearing held within five (5) days to determine the validity of the charges and hear the employee's defense."  (Doc. 75, Ex. K at 19.)  D'Altilio received a notice of termination when the township dismissed him, but the township did not hold a hearing.  (Doc. 75, Ex. C at 36-37.)

---

[4] Morris never placed any complaints or reprimands in D'Altilio's personnel file. (Doc. 70 ¶ 53; Doc. 75 ¶¶ 52-53.)  Morris found that a few incidents involving inappropriate abruptness "call[ed] for a reprimand," (Doc. 75, Ex. C at 86:1-3), but he reprimanded D'Altilio verbally for them, (Doc. 70 ¶ 159; Doc. 75 ¶ 159).

D'Altilio filed the present action on September 28, 2006. He alleges violations of his Fourteenth Amendment right to equal protection under 42 U.S.C. § 1983. He also advances claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-934; and the Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. ANN. §§ 951–963. Defendants filed a motion for summary judgment (Doc. 68) pursuant Rule 56(c) of the Federal Rules of Civil Procedure. The parties have fully briefed these issues, which are ripe for disposition.

## II.   Standard of Review

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact" and for which a jury trial would be an empty and unnecessary formality. See FED. R. CIV. P. 56(c). The burden of proof is upon the nonmoving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the nonmovant on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986); see also FED. R. CIV. P. 56(c), (e). Only if this threshold is met may the cause of action proceed. Pappas, 331 F. Supp. 2d at 315.

### III.  Discussion

D'Altilio alleges violations of his right to equal protection by all defendants under 42 U.S.C. § 1983.  He also asserts claims of disparate treatment in violation of the ADEA, Title VII and the PHRA against Dover Township, claims of retaliation in violation of Title VII and the PHRA against Dover Township, and a PHRA claim for individual liability against Shermeyer, Bonsell, and Hull (hereinafter collectively "individual defendants").  The court will address these issues *seriatim*.

### A.  Equal Protection Pursuant to 42 U.S.C. § 1983

D'Altilio advances a claim pursuant to 42 U.S.C. § 1983,[5] alleging that defendants deprived him of his right to equal protection guaranteed by the Fourteenth Amendment.  Section 1983 provides protection when official action causes a "deprivation of rights protected by the Constitution."  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).  However, § 1983 is not an independent source of substantive rights.  Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  Rather, "it provides only remedies for

---

[5]Section 1983 states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

7

deprivations of rights established elsewhere in the Constitution or federal laws."

Kneipp, 95 F.3d at 1204; see also Collins v. City of Harker Heights, 503 U.S. 115, 119

(1992) (stating that § 1983 "does not provide a remedy for abuses that do not violate

federal law"). In order to establish a § 1983 claim, a plaintiff must demonstrate,

first, the deprivation of a constitutional right, and, second, that a "person acting

under the color of state law" is responsible for the alleged deprivation. Kneipp, 95

F.3d at 1204 (internal citations omitted); Collins, 503 U.S. at 120.

In the instant case, the undisputed facts show that defendants acted under

color of state law by discharging D'Altilio through a formal vote and resolution of

the board of supervisors. See Russoli v. Salisbury Twp., 126 F. Supp. 2d 821, 839

(E.D. Pa. 2000) ("Actions by an officer in his official capacity are under color of law

even if they are not in furtherance of state policy and even if they violate state

law."). D'Altilio has satisfied the first of the prima facie inquiries; the court

therefore turns to the alleged deprivations of his equal protection right.

The Equal Protection Clause of the Fourteenth Amendment directs that all

similarly situated individuals be treated alike. City of Cleburne v. Cleburne Living

Ctr., 473 U.S. 432, 439 (1985). Two theories exist upon which a plaintiff may

predicate an equal protection claim: the traditional theory and the class-of-one

theory. The traditional theory protects a plaintiff from discriminatory treatment

based on membership in a protected class such as race. See, e.g., id.; McLaughlin v.

Florida, 379 U.S. 184, 192 (1964). To assert a protected class claim, the plaintiff

must demonstrate that (1) he or she is a member of a protected class and (2) the

government treated similarly situated individuals outside of the protected class differently. See Oliveira v. Twp. of Irvington, 41 F. App'x 555, 559 (3d Cir. 2005) (observing that a *prima facie* case under the Equal Protection Clause requires plaintiffs to prove membership in "a protected class and that they received different treatment than that received by other similarly-situated individuals"); Keenan v. City of Phila., 983 F.2d 459, 465 (3d Cir. 1992). Under this theory a plaintiff "must prove the existence of purposeful discrimination" by defendants. Keenan, 983 F.2d at 465.

In contrast, under the class-of-one theory, a plaintiff may advance an equal protection claim absent membership in a protected class if the plaintiff shows irrational and intentional differential treatment when compared with similarly situated individuals. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). This theory allows a plaintiff to assert an equal protection claim regardless of protected class when the government irrationally treats the plaintiff differently than similarly situated individuals. Id. at 564; Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006). To assert a class-of-one claim, D'Altilio must demonstrate "that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." Hill, 455 F.3d at 239.

D'Altilio advances claims under both theories against all defendants. The court will first analyze whether D'Altilio's claim against the individual defendants can survive summary judgment under either theory. It will then turn to his claim

against Dover Township.

### 1. **Individual Defendants**

D'Altilio alleges that supervisors Shermeyer, Bonsell, and Hull deprived him of equal protection guaranteed by the Fourteenth Amendment. He relies on both the traditional theory and the "class of one" theory in support of this argument.

In order for his equal protection claim to survive summary judgment under the traditional theory, D'Altilio must present evidence that the township's treatment of similarly situated employees outside his protected class differed from the treatment he received. D'Altilio qualifies as a member of a protected class based upon his Italian descent. See Mass. Bd. of Retirement v. Murgia, 427 U.S. 307, 312 n.4, 313 (1976) (listing ancestry as a suspect class and referring to national origin as an example of a suspect class with a "history of purposeful unequal treatment"). Therefore, the court will turn to the question of whether defendants treated similarly situated employees outside the class differently.

The parties dispute whether other employees of Dover Township were similarly situated to D'Altilio. D'Altilio alleges that there were similarly situated non-Italian employees, including the two prior directors of the Department of Public Works and four "managers" or "supervisory employees," and defendants did not subject any of them to derogatory comments, investigations, or dismissal by vote of the board of supervisors. Defendants insist that D'Altilio's allegations are not supported by sufficient evidence to avoid summary judgment, but the court disagrees. In light of D'Altilio's evidence, most notably that Dover Township

supervisors would normally follow township personnel policies and procedures but failed to do so in D'Altilio's case,[6] a reasonable jury could that defendants did, in fact, treat D'Altilio differently from similarly situated individuals outside of his protected class. A genuine issue of material fact therefore exists, and summary judgment is not appropriate. See Anderson, 477 U.S. at 248-49.

D'Altilio also relies on the "class of one" theory. Although the "class of one" theory does not require a showing of membership in a protected class, it does require evidence that the government treated an individual differently from similarly situated individuals, with no rational basis for doing so. As explained above, there is a disputed fact issue as to whether the individual defendants subjected D'Altilio to different treatment than similarly situated employees. Because the evidence could support a jury verdict in D'Altilio's favor, the dispute is genuine, and the court must deny defendants' motion for summary judgment. See id.

---

[6] The evidence of record suggests that the board of supervisors normally left termination decisions to the township manager, in accordance with township policy, except when eliminating a position from the township budget, as the board was authorized to do. (See Doc. 75, Ex. C at 39; Doc. 75, Ex. K at 3, 19.) The record also indicates that when the township discharged other employees, it provided them with a hearing. For instance, a lower-level employee who was fired for misconduct received an opportunity to be heard, though he did not attend. (Doc. 75, Ex. B at 61:19-25, 63:10-13)

In D'Altilio's case, by contrast, there was no hearing, and the board of supervisors, not the manager, directed his dismissal. Morris testified that he discharged D'Altilio solely as a result of the board's directive, and that it was his understanding that he was obligated as manager to carry out the decisions made by a majority of the board of supervisors. (Doc. 75, Ex. C at 35-36, 42-43.)

## 2. __Municipal Liability__

D'Altilio also advances an equal protection claim against Dover Township. Municipalities and other local government entities may not be held liable under § 1983 for the acts of their employees under a theory of *respondeat superior* or vicarious liability. Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997). However, a municipality may be held liable if the plaintiff can "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Id. (citing Monell, 436 U.S. at 694).

A policy is an official proclamation or edict of a municipality, while a custom is a practice that is "so permanent and well settled as to virtually constitute law." Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted); see also Watson v. Abington Twp., 478 F.3d 144, 155 (3d Cir. 2007) (reiterating that municipal policy exists when an individual with final decisionmaking authority "issues an official proclamation, policy, or edict"). "A custom is an act 'that has not been formally approved by an appropriate decisionmaker,' but that is 'so widespread as to have the force of law." Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (quoting Brown, 520 U.S. at 404). The policy or custom upon which the plaintiff bases a claim must emanate from individuals with the authority to promulgate municipal standards in the relevant area. See LaVerdure v. County of Montgomery, 324 F.3d 123, 126 (3d Cir 2003) ("To be a policymaker for § 1983 purposes, an official must have *final* policymaking authority."). A plaintiff must

demonstrate either that the policymaker's action violated the plaintiff's rights or that the policymaker failed to act when presented with an obvious need for action, rendering the municipality "deliberately indifferent" to the situation. Natale, 318 F.3d at 584 (quoting Brown, 520 U.S. at 417-18).

In the instant matter, the undisputed facts establish that the township's board of supervisors discharged D'Altilio through a formal vote and resolution. That fact is sufficient to support a finding that a municipal policy caused D'Altilio's injury; "a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body . . . because even a single decision by such a body unquestionably constitutes an act of official government policy." Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986) (citing Owen v. City of Independence, 455 U.S. 622 (1980)) (noting that in Owen, "City Council passed resolution firing the plaintiff without a pretermination hearing").

Even though D'Altilio has identified a municipal policy, his claim must fail under the "class of one" theory, because of binding Supreme Court precedent that "the class-of-one theory of equal protection does not apply in the public employment context." Engquist v. Or. Dep't of Agric., --- U.S. ---, 128 S. Ct. 2146, 2151 (2008). Therefore, the court will grant summary judgment in favor of the defendants on the "class of one" theory of liability for D'Altilio's equal protection claim against the municipality.

Under the traditional theory of liability, however, genuine issues of material fact remain. Just as there was a dispute as to whether the individual defendants

13

treated D'Altilio differently from similarly situated non-Italians, as explained above, there is also a genuine issue of material fact as to whether Dover Township did so. Thus, summary judgment must be denied.

**B. Title VII, PHRA, and ADEA**

D'Altilio accuses Dover Township of disparate treatment on the basis of national origin and age, pursuant to Title VII, the PHRA, and the ADEA. He also presents retaliation claims against Dover Township under Title VII and the PHRA. Finally, he asserts PHRA claims for individual liability against Shermeyer, Bonsell, and Hull.

**1. National Origin Discrimination**[7]

D'Altilio alleges that his employer, Dover Township, subjected him to disparate treatment because of his Italian heritage.[8] Title VII and the PHRA

---

[7] Analysis of disparate treatment claims under the PHRA is equivalent to that under Title VII and other federal anti-discrimination statutes. See, e.g., Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ., 470 F.3d 535, 539 n.5 (3d Cir. 2006); Fasold v. Justice, 409 F.3d 178, 184 n.8 (3d Cir. 2005). The analysis that follows applies to the claims arising under both statutes.

[8] Despite D'Altilio's references to his "Italian ethnicity," the court understands his claim to be based on national origin. See Storey v. Burns Int'l Sec. Servs., 390 F.3d 760, 763 n.3 (3d Cir. 2004) ("'National origin' usually 'refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came.'" (quoting Espinoza v. Farah Mfg. Co., 414 U.S. 86, 88 (1973))).

prohibit discrimination on the basis of national origin and ancestry.[9] To withstand a motion for summary judgment on a disparate treatment claim, a plaintiff must establish that his or her "protected trait played a role in the employer's decision-making process and had a determinative influence on the outcome of that process." Ulitchney v. Potter, No. 3:04-CV-0991, 2006 WL 1722391, at *2 (M.D. Pa. June 16, 2006) (quoting Monaco v. Amer. Gen. Assurance. Co., 359 F.3d 296, 300 (3d Cir. 2004)). A plaintiff may meet this burden with either direct evidence, see Price Waterhouse v. Hopkins, 490 U.S. 288 (1989) (O'Connor, J., concurring), or circumstantial evidence, see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802

---

[9] Title VII provides, in pertinent part, as follows:

It shall be an unlawful employment practice for an employer --
(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or *national origin*; or
(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or *national origin*.

42 U.S.C. § 2000e-2(a) (emphasis added). The PHRA provides as follows:

It shall be an unlawful discriminatory practice . . .
(a) For any employer because of the race, color, religious creed, *ancestry*, age sex, [or] *national origin* . . . of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract . . . .

43 Pa. Stat. Ann. § 955 (emphasis added).

(1973). In the instant case, D'Altilio has not provided direct evidence of discrimination;[10] therefore, the court will examine his claims using the three step burden-shifting analysis set forth in McDonnell Douglas.

Under McDonnell Douglas, the first step requires a plaintiff to establish a *prima facie* case of discrimination by proving the following elements: (1) the plaintiff is a member of a protected class, (2) the plaintiff was qualified for the position he held or sought, (3) the plaintiff suffered an adverse employment action, and (4) the circumstances of the adverse employment action give rise to an inference of discrimination. Johnson v. Keebler-Sunshine Biscuits, Inc., 214 F. App'x 239, 241-42 (3d Cir. 2007); Connors v. Chrysler Fin. Corp., 160 F.3d 971, 974 (3d Cir. 1998). Once the *prima facie* case is established, the burden shifts to the defendant to articulate some "legitimate, nondiscriminatory reason" for the plaintiff's treatment. Iadimarco v. Runyon, 190 F.3d 151, 157 (3d Cir. 1999) (citing McDonnell Douglas, 411 U.S. at 802); Keller v. Orix Credit Alliance, 130 F.3d 1101, 1108 (3d Cir. 1997). The defendant's burden to prove a legitimate non-discriminatory reason is "relatively light." Johnson, 214 F. App'x at 242-43. The

---

[10] Direct evidence is "evidence that proves an ultimate fact in the case without any process of inference." Woodson v. Scott Paper Co., 109 F.3d 913, 930 (3d Cir. 1997). An employer who discriminates "will almost never announce a discriminatory animus or provide employees or courts with direct evidence of discriminatory intent." Iadimarco v. Runyon, 190 F.3d 151, 157 (3d Cir. 1999). Therefore, a plaintiff who wishes to establish a *prima facie* case of discrimination using direct evidence "faces a high hurdle." Connors v. Chrysler Fin. Corp., 160 F.3d 971, 976 (3d Cir. 1998). The court finds no evidence to suggest that D'Altilio has cleared this hurdle in the instant action.

defendant is only required to prove that its actions could have been motivated by the proffered legitimate, nondiscriminatory reason; proof of actual causation is not required. Iadimarco, 190 F.3d at 157. Once the defendant has met its burden, the plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant are merely a pretext for discrimination." Johnson, 214 F. App'x at 241-42. The plaintiff may meet this burden by presenting evidence from which a reasonable factfinder could "either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Keller, 130 F.3d at 1108.

Turning to the *prima facie* case in the action *sub judice*, the undisputed facts show that D'Altilio is a member of a protected class based on his Italian descent, that he had the necessary qualifications to serve as director of the Public Works Department, and that he suffered an adverse employment action when the township terminated his employment. Thus, D'Altilio has met the first three prongs of the *prima facie* case. The court must therefore evaluate the fourth prong: whether the circumstances of D'Altilio's termination give rise to an inference of discrimination. The Supreme Court has made it clear that "the precise elements of a plaintiff's *prima facie* case may vary with the particular circumstances." Waldron v. SL Indus., 56 F.3d 491, 494 n.3 (3d Cir. 1995) (citing, *inter alia*, McDonnell Douglas, 411 U.S. at 802 n.14). Accordingly, a plaintiff can satisfy the fourth

element of a *prima facie* case in a variety of ways.[11] The court will examine the circumstances of D'Altilio's case and analyze whether an inference of discrimination on the basis of national origin arises therefrom.

A plaintiff could complete the fourth step of his *prima facie* case by showing that his employer replaced him with someone outside of his protected class, see Sheridan v. E.I. Dupont de Nemours & Co., 100 F.3d 1061, 1066 n.5 (3d Cir. 1996). D'Altilio has not come forward with evidence that the township hired a non-Italian individual to replace him.[12] Therefore, he has failed to make out a *prima facie* case for national origin discrimination through this method.

Alternatively, an inference of discrimination will arise where the plaintiff was "treated differently than similarly-situated, non-protected employees." Johnson,

---

[11] Some of the ways in which a plaintiff could establish the final element of a *prima facie* case are inapposite to the instant case. For instance, an applicant who was never hired could complete her *prima facie* case by showing "a rejection of plaintiff accompanied, or followed by, a filling of the job with a person not belonging to the protected category." Olson v. GE Astrospace, 101 F.3d 947, 951 (3d Cir. 1996). Additionally, such a plaintiff could show that "after [plaintiff's] rejection, the position remained open and the employer continued to seek applicants from persons of [the plaintiff's] qualifications." McDonnell Douglas, 411 U.S. at 802. Because Dover Township hired D'Altilio, these standards are inapplicable.
 A plaintiff whose employment was terminated may state a *prima facie* case by showing that his former employer "sought applicants with the plaintiff's qualifications." Matczak v. Frankford Candy & Chocolate Co., 136 F.3d 933, 939 (3d Cir. 1997) (citing Olson, 101 F.3d at 951). D'Altilio presents no evidence supporting a *prima facie* case under this standard. The parties' briefs neither address this standard nor inform the court of the qualifications that Dover Township sought when it eventually hired a new director for the Department of Public Works.

[12] D'Altilio has not informed the court of the new director's national origin. Supervisor Shermeyer's interrogatory answer indicates that the new director's ethnicity was unknown. (Doc. 75, Ex. M at ¶ 20.)

214 F. App'x at 242. Similarly-situated employees are those who "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Ogden v. Keystone Residence, 226 F. Supp. 2d 588, 603 (M.D. Pa. 2002); see also Red v. Potter, No. 05-5256, 2006 WL 3349563, at *2 (3d Cir. 2006) (stating that "in order to show that an employee is 'similarly situated,' all of the relevant aspects of employment need to be nearly identical"). Although it is not clear that any other employees were similarly situated to D'Altilio, there are sufficient disputes of material fact to preclude summary judgment. The Supreme Court has held:

> [T]he issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.

Anderson, 477 U.S. at 248-49 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968). In the instant case, D'Altilio's evidence has met that threshold. The fact that Dover Township's treatment of D'Altilio ran afoul of its own termination policies and procedures is particularly suspect, especially when considered in conjunction with Shermeyer's alleged reference to D'Altilio as "Mafia

Mike"[13] and the other evidence of record.[14] Thus, the court finds a genuine issue as to whether the township treated D'Altilio differently from similarly situated employees outside of his protected class, and it will deny summary judgment on D'Altilio's claim of national origin discrimination.

---

[13] The court acknowledges Third Circuit precedent that "[s]tray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision." Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 545 (3d Cir. 1992). The Third Circuit has also held, however, that "such remarks could provide background evidence that may be critical to a jury's determination of whether the decision-maker was more likely than not acting out of a discriminatory motive." Doe v. C.A.R.S. Prot. Plus, 527 F.3d 358, 368 (3d Cir. 2008) (citing Antol v. Perry, 82 F.3d 1291, 1302 (3d. Cir. 2006)). Therefore, although supervisor Shermeyer's "Mafia Mike" comment might be insufficient to support D'Altilio's disparate treatment claim if it stood alone, the court finds that, collectively, D'Altilio's evidence does suffice to establish a genuine issue of material fact.

[14] D'Altilio also relies on supervisor Shermeyer's reference to him as "Humpty Dumpty" and on supervisor Bonsell's remark that D'Altilio "isn't one of us" and his comment about D'Altilio's attire. The "Humpty Dumpty" remark provides no support for D'Altilio's claims, because there is no evidence that "Humpty Dumpty" referred to a protected status, such as national origin or age, nor does D'Altilio so argue. To the contrary, D'Altilio has characterized that phrase as a reference to his size and weight, (Doc. 46 ¶ 38), which are not protected characteristics under Title VII, the ADEA, or the PHRA. Supervisor Bonsell's comments are more enigmatic; their significance is in dispute. The comment that D'Altilio "isn't one of us" could refer to any number of characteristics that distinguish D'Altilio from Bonsell and other individuals. With respect to his allegedly derogatory comment on D'Altilio's attire, supervisor Bonsell testified under oath that his comment was not meant in a disrespectful or derogatory nature; rather, it was merely an observation or warning, "almost like a favor," that D'Altilio's apparel could be soiled as he traveled to various work sites. (Doc. 71, Ex. C at 101.) D'Altilio, however, referred to this testimony as a "self-serving spin." (Doc. 75 ¶ 251). Depending how a jury would interpret supervisor Bonsell's remarks, they could potentially support D'Altilio's claims, just as supervisor Shermeyer's "Mafia Mike" comment does.

## 2.    Age Discrimination

D'Altilio also claims that the township violated the ADEA by subjecting him to disparate treatment because of his age.[15]  To succeed on this claim, D'Altilio "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of" Dover Township's decision to dismiss him.  Gross v. FBL Fin. Servs., Inc., --- U.S. ---, 129 S. Ct. 2343, 2352, 174 L. Ed. 119, 131 (2009).  The court will apply the McDonnell Douglas framework, detailed above, to analyze the sufficiency of D'Altilio's circumstantial evidence of age discrimination.[16]

---

[15] The ADEA provides, in pertinent part, as follows:

It shall be unlawful for an employer --
(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age . . . .

29 U.S.C. § 623(a).

[16] The Supreme Court "has not definitively decided whether the evidentiary framework of McDonnell Douglas . . . , utilized in Title VII cases is appropriate in the ADEA context."  Gross, --- U.S. ---, 129 S. Ct. at 2349 n.2, 174 L. Ed. at 128 n.2.  It did, however, apply the McDonnell Douglas analysis in Reeves, an ADEA case in which the parties did not dispute that doing so was proper.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000).  Moreover, the Court has cited Reeves as a decision in which "the plaintiff retain[ed] the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action."  Gross, --- U.S. ---, 129 S. Ct. at 2351, 174 L. Ed. at 129.
The Third Circuit, in a non-precedential opinion, has affirmed a District Court's grant of summary judgment on an ADEA claim where the District Court applied the McDonnell Douglas framework.  See Milby v. Greater Phila. Health Action, No. 08-2865, 2009 WL 2219226, at *1 (3d Cir. July 27, 2009).

D'Altilio, at age sixty-four, is a member of the ADEA's protected class, "individuals who are at least 40 years of age." 29 U.S.C. § 631(a). Thus, he has met the first prong of the *prima facie* case for age discrimination. As explained above, D'Altilio has met the second and third prongs of the *prima facie* case by showing that he had the necessary qualifications for the position he held and that he suffered an adverse employment action when Dover Township discharged him.

In age discrimination cases, courts have recognized a slightly different standard under which plaintiffs can establish the fourth prong of a *prima facie* case. Because a plaintiff could be a victim of age discrimination even if his younger replacement is also within the ADEA's protected class (that is, "individuals who are at least 40 years of age"), see 29 U.S.C. § 631(a), protected class status is not dispositive. In this context, a showing that "the plaintiff was replaced by a sufficiently younger person to create an inference of age discrimination" will suffice. Keller, 130 F.3d at 1108; O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996) ("Because it lacks probative value, the fact that an ADEA plaintiff was replaced by someone outside the protected class is not a proper element of the McDonnell Douglas prima facie case."). In D'Altilio's case, the evidence could support an inference of age discrimination. See Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d 231, 236 (3d Cir. 1999) ("In order for a plaintiff to satisfy the 'sufficiently younger' standard, we have noted that there is no 'particular age difference that must be shown,' but while 'different courts have held . . . that a five year difference can be sufficient, . . . a one year difference cannot." (quoting

<u>Sempier v. Johnson & Higgins</u>, 45 F.3d 724, 729 (3d Cir. 1995))). The township did not replace D'Altilio until a few years after discharging him, but it did eventually hire a new director for the Public Works Department, and the new director was 52 years old, more than ten years younger than D'Altilio. (Doc. 69 at 22; Doc. 81 at 4; Doc. 75, Ex. M at ¶ 20; Doc. 69 at 24; Doc. 75, Ex. M at ¶ 20.) There is also some evidence in the record that, before Dover Township hired D'Altilio, supervisor Shermeyer favored hiring a younger candidate in his place. (Doc. 75, Ex. C at 15.) The court thus concludes that D'Altilio has presented sufficient evidence to support a *prima facie* case of age discrimination. Therefore, the court will examine the second step of the <u>McDonnell Douglas</u> analysis: whether Dover Township has proven that its decision to discharge D'Altilio could have been motivated by legitimate reasons.

At this step, defendant's burden "is satisfied if the defendant articulates any legitimate reason for the discharge; the defendant need not prove that the articulated reason actually motivated the discharge." <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 920 (3d Cir. 1996). Dover Township argues that D'Altilio was terminated for the legitimate nondiscriminatory reason that his job performance was unsatisfactory. The undisputed facts show that township supervisors received a number of complaints regarding D'Altilio's performance, and Morris's investigation confirmed at least a few of them.[17] Thus, Dover Township has

---

[17] <u>See</u> <u>supra</u> note 2.

satisfied its burden, and the court will turn to the third and final step of the McDonnell Douglas framework.

At the final step of the <u>McDonnell Douglas</u> analysis, D'Altilio bears the burden of proving pretext, which is a "difficult burden" for the plaintiff.  <u>Pamintuan v. Nanticoke Mem'l Hosp.</u>, 192 F.3d 378, 386 (3d Cir. 1999).  The plaintiff must show "not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real reason."  <u>Keller</u>, 130 F.3d at 1109.  D'Altilio has failed to create a material issue of fact as to whether the defendants' dissatisfaction with his job performance was a pretext for discriminatory animus.  Indeed, the fact that Dover Township hired D'Altilio at the age of sixty-four would make it very difficult for him to establish that his employer harbored animosity against the aged.  D'Altilio's brief in opposition to defendant's motion for summary judgment does not argue that defendants' reasons for discharging him were pretextual.  Nor does D'Altilio present any evidence of pretext for age-related bias.  Therefore, defendant's motion for summary judgment will be granted with respect to plaintiff's age discrimination claim.

### 3.    **Retaliation**[18]

D'Altilio alleges that the township engaged in retaliation by discharging him as a result of his participation in a protected employment activity.  Title VII proscribes retaliation by an employer against "employees or applicants for employment . . . because [they] ha[ve] opposed any practice made an unlawful employment practice by this subchapter, or because [they] ha[ve] made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).[19]  Defendants raise two arguments against D'Altilio's retaliation claim: first, that the claim is barred by his failure to exhaust administrative remedies, and second, that D'Altilio failed to make out a *prima facie* case.  The court will address these arguments in turn.

### a.    **Failure to Exhaust**

Before pursuing a Title VII claim in federal court, claimants alleging a Title VII violation by a political subdivision must present their claim to a state

---

[18] Analysis of a retaliation claim under the PHRA is equivalent to that under Title VII.  See Morrissey v. Luzerne County Cmty. College, 117 F. App'x 809, 815 (3d Cir. 2004); Jones v. Sch. Dist. of Phila. 198 F.3d 403, 410 (3d Cir. 1999); Woodson v. Scott Paper Co., 109 F.3d 913, 920 (3d Cir. 1997).  The analysis that follows applies to the claims arising under both statutes.

[19] A plaintiff who suffers an adverse employment action as a result of the plaintiff's opposition to an employer's discriminatory practices may bring a retaliation claim.  See, e.g., Bielek v. Allegheny Ludlum Corp., No. 2:04-CV-1910, 2006 WL 2773487, at *17 (W.D. Pa. Sept. 22, 2006) (stating that a retaliation claim may be predicted on activity that "express[es], either explicitly or implicitly, opposition to discrimination on the basis of some protected characteristic, such as race, gender, age, or disability).

administrative agency.  See 42 U.S.C. § 2000e-5(c).  In Pennsylvania, this agency is

the Pennsylvania Human Relations Commission ("PHRC").  Sixty days after filing

with the state agency, the claimant may file a charge with the EEOC.  See id.  If the

EEOC elects not to pursue the claimant's allegations, it will issue the claimant a

right-to sue-letter.  See id. § 2000e-5(f)(1).  The claimant may file an action in federal

court after receiving this letter.  See id.; see also id. § 2000e-16; Waiters v. Parsons,

729 F.2d 233, 237 (3d Cir. 1984) (per curiam).

Compliance with this administrative framework is mandatory.  See Burgh v.

Borough Council, 251 F.3d 465, 471 (3d Cir. 2001).  However, "a district court may

assume jurisdiction over additional charges [beyond those raised in an administra-

tive complaint] if they are reasonably within the scope of the complainant's original

charges and if a reasonable investigation by the EEOC would have encompassed

the new claims."  Howze v. Jones & Laughlin Steel Corp., 750 F.2d 1208, 1212 (3d

Cir. 1984); see also Antol v. Perry, 82 F.3d 1291, 1295 (3d Cir. 1996) (quoting Waiters,

729 F.2d at 237) ("The relevant test . . . is whether the acts alleged in the subsequent

Title VII suit are fairly within the scope of the prior EEOC complaint, or the

investigation arising therefrom."); Anjelino v. N.Y. Times Co., 200 F.3d 73, 94 (3d

Cir. 1999) (quoting Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir.

1976)) (stating that the "parameters of a civil action in the District Court are defined

by the scope of the [administrative] investigation which can reasonably be expected

to grow out of the charge of discrimination").  Despite their authority to assume

jurisdiction over additional charges, courts are often reluctant to allow a plaintiff to

26

join additional retaliation claims with those asserted in an administrative charge if "the alleged retaliation occurred prior to the EEOC charge," such that the plaintiff could have included it in the charge. See Simmerman v. Hardee's Food Sys., No. Civ. A. 94-6906, 1995 WL 628140, at *2 (E.D. Pa. Oct. 24, 1995) (quoting Farber v. Gen. Elec. Co., No. Civ. A. 93-2349, 1994 WL 46519, at *2 (E.D. Pa. Feb. 16, 1994); see also Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 413 n.18 (E.D. Pa. 2000).

D'Altilio's administrative charge, filed with the PHRC on January 31, 2005, contains claims for ancestry and age discrimination but not for retaliation. (See Doc. 18, Exh. A ¶¶ 5-22.) Nevertheless, it unambiguously identifies Shermeyer as the moving impetus behind his termination. It asserts that she made disparaging comments about his ethnicity, (id. ¶ 14), opposed his appointment to a position with the township, (id. ¶ 13), and preferred to hire a younger person for his position, (id. ¶ 21). In light of the evidence that a township supervisor interfered with D'Altilio's employment to such an extent, the court cannot conclude as a matter of law that an administrative investigation of reasonable scope would not have encompassed an examination of defendants' possible interference in D'Altilio's hiring decisions. Thus, summary judgment would be inappropriate.

### b. **Failure to Establish a *Prima Facie* Case**

To state a *prima facie* case of retaliation, a plaintiff must allege that: (1) he or she engaged in a protected activity, (2) the employer subjected him or her to an adverse employment action, and (3) "a causal link exists between the protected activity and the adverse action." Weston v. Pennsylvania, 251 F.3d 420, 430 (3d Cir.

2001); see also Aguiar v. Morgan Corp., 27 F. App'x 110, 112 (3d Cir. 2002); Glenn v.

Horgan Bros., Inc., No. Civ. A. 03-6578, 2005 WL 1503428, at *2 (E.D. Pa. June 24,

2005). If a plaintiff establishes a *prima facie* case of retaliation, McDonnell Douglas

burden-shifting applies: "'[T]he burden shifts to the employer to advance a

legitimate, non-retaliatory reason for its adverse employment action.' If the

employer satisfies that burden, the plaintiff must then prove that 'retaliatory

animus played a role in the employer's decisionmaking process and that it had a

determinative effect on the outcome of that process.'" Shellenberger v. Summit

Bancorp., Inc., 318 F.3d 183, 187 (3d Cir. 2003) (quoting Krouse v. Am. Sterilizer Co.,

126 F.3d 494, 500 (3d Cir. 1997)).

In the case *sub judice*, D'Altilio has come forward with evidence that he took

part in a protected activity: resisting pressure from township supervisors to decline

to hire a certain job applicant on the basis of her gender and size, or to reconsider

his decision to hire this particular applicant. (Doc. 84, Ex. A at 172-74; Doc. 84, Ex.

B.) "[P]rotesting what an employee believes in good faith to be a discriminatory

practice is clearly protected conduct." Aman v. Cort Furniture Rental Corp., 85

F.3d 1074, 1085 (3d Cir. 1996). Thus, D'Altilio has avoided summary judgment on

the first prong of his *prima facie* case. The fact that Dover Township terminated his

employment, which is beyond dispute, is sufficient to satisfy the second prong of

D'Altilio's *prima facie* case of retaliation. See Weston v. Pennsylvania, 251 F.3d 420,

430-31 (3d Cir. 2001) (listing "firing" as an example of a "significant change in

employment status," such that it qualifies as an adverse employment action)

28

(quoting <u>Burlington Indus. v. Ellerth</u>, 524 U.S. 742, 768 (1998)). Turning therefore to the third prong, the court will analyze whether D'Altilio has shown a "causal link" between the protected activity and his dismissal.

Cases from the Third Circuit and the Supreme Court have provided this court with "a broad array of evidence" to consider "in determining whether a sufficient causal link exists to survive a motion for summary judgment." <u>LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n</u>, 503 F.3d 217, 232 (3d. Cir 2007) (citing <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 284 (3d Cir. 2000)). "Where the temporal proximity between the protected activity and the adverse action is 'unusually suggestive,' it is sufficient standing alone to create an inference of causality and defeat summary judgment." <u>Id.</u> (citing <u>Clark County School Dist. v. Breeden</u>, 532 U.S. 268, 273-74 (2001); <u>Jalil v. Avdel Corp.</u>, 873 F.2d 701, 708 (3d Cir. 1989)). "Where the temporal proximity is not 'unusually suggestive,' we ask whether 'the proffered evidence, looked at as a whole, may suffice to raise the inference.'" <u>Id.</u> (citing <u>Farrell</u>, 206 F.3d at 280). "Among the kinds of evidence that a plaintiff can proffer are intervening antagonism or retaliatory animus, inconsistencies in the employer's articulated reasons for terminating the employee, or any other evidence in the record sufficient to support the inference of retaliatory animus." <u>Id.</u> at 232-33 (citing <u>Farrell</u>, 206 F.3d at 279-81). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252.

Standing alone, the temporal proximity of the relevant events in the pending action is insufficient to establish causality.  Indeed, the supervisors' objections to the hiring at issue occurred around September 2, 2004, several months before the township discharged D'Altilio.  (Doc. 84, Ex. A at 173.)  Looking at the evidence as a whole, however, the court finds that it suffices to support the inference.  D'Altilio's termination was highly irregular, as the court has already discussed, most notably because the township disregarded its own policies and procedures in dismissing D'Altilio by a vote of the board and by failing to afford him a hearing.  An inference of causality arises from D'Altilio's evidence; therefore, the court will deny defendants' motion for summary judgment on D'Altilio's retaliation claim.

### 4. <u>Individual Liability under the PHRA</u>

D'Altilio asserts PHRA claims for individual liability against Shermeyer, Bonsell, and Hull.  The PHRA forbids "any person . . . to aid, abet, incite, compel, or coerce the doing of any . . . unlawful discriminatory practice . . . or to attempt, directly or indirectly, to commit any . . . unlawful discriminatory practice."  43 PA. STAT. ANN. § 955(e).  Unlawful discriminatory practices include, *inter alia*, employment termination on the basis of ancestry, age, or national origin.  <u>Id.</u> § 955(a).  A PHRA plaintiff may advance individual liability claims against supervisory employees who bear responsibility for implementing an allegedly unlawful discriminatory practice.  <u>See</u> <u>Carlton v. City of Phila.</u>, No. Civ. A. 03-1620, 2004 WL 633279, at *8 (E.D. Pa. Mar. 30, 2004) (stating that supervisory employees can be held liable based upon "the theory that . . . [they] share the discriminatory

purpose and intent of the employer."). Case law from the Third Circuit explains that an individual can be liable under § 955(e) either for his own discriminatory acts or for "refusing to take prompt remedial action against any discrimination suffered by" an employee. <u>Dici v. Pennsylvania</u>, 91 F.3d 542, 552-53 (3d Cir. 1996); <u>see also</u> <u>Davis v. Levy, Angstreich, Finney, Baldante, Rubenstein & Coren, P.C.</u>, 20 F. Supp. 2d 885, 887 (E.D. Pa. 1998).

As explained above, genuine issues of material fact regarding D'Altilio's claims of discriminatory practices, including disparate treatment and retaliation, remain disputed. Just as D'Alilio's evidence was adequate to preclude summary judgment on the question of whether discriminatory practices occurred, it also suffices to avoid summary judgment on the question of whether the individual defendants are responsible for said practices. D'Altilio has come forward with evidence that supervisors Shermeyer and Bonsell may have made disparaging remarks about him, and he has also presented evidence that all three individual defendants engaged in an unprecedented departure from Dover Township's termination policies and procedures when they arranged for his dismissal. This evidence could sustain a finding that the individual defendants treated him differently than similarly situated employees or that they retaliated against him for engaging in a protected employment activity. Defendants' motion for summary judgment on this claim will therefore be denied.

## IV.    Conclusion

Supreme Court precedent prevents D'Altilio's equal protection claim from proceeding against Dover Township under a "class of one" theory of liability.  In addition, D'Altilio has failed to come forward with sufficient proof of disparate treatment on the basis of age to survive the burden-shifting analysis set forth in McDonnell Douglas.  The court will therefore grant summary judgment on these two issues.  With respect to D'Altilio's other claims, however, the court will deny defendants' motion for summary judgment on the basis that genuine issues of material fact remain in dispute.

An appropriate order follows.


　

 S/ Christopher C. Conner　
CHRISTOPHER C. CONNER
United States District Judge


Dated:      September 14, 2009

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL D'ALTILIO,** | : | **CIVIL ACTION NO. 1:06-CV-1931** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **DOVER TOWNSHIP,** | : | |
| **MADELYN SHERMEYER,** | : | |
| **DONALD L. BONSELL, and** | : | |
| **DUANE E. HULL,** | : | |
| | : | |
| **Defendants** | : | |

## ORDER

AND NOW, this 14th day of September, 2009, upon consideration of the

defendants' motion for summary judgment (Doc. 68), and for the reasons set forth

in the accompanying memorandum, it is hereby ORDERED that:

    1.    The motion for summary judgment (Doc. 68) is GRANTED in part and DENIED in part as follows:

        a.    The motion is GRANTED insofar as it seeks dismissal of plaintiff's equal protection claim against defendant Dover Township under a "class of one" theory of liability.

        b.    The motion is GRANTED insofar as it seeks dismissal of plaintiff's age discrimination claim.

        c.    The motion is DENIED in all other respects.

2.      A revised pretrial and trial schedule shall issue by future order of court.

 S/ Christopher C. Conner   
CHRISTOPHER C. CONNER
United States District Judge